## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

HOWARD COHAN,

          **Plaintiff,**

v.                                                  **Case No: 6:23-cv-2316-PGB-DCI**

CARMEL MANAGEMENT GROUP
LLC,

          **Defendant.**

_____

## ORDER

This cause is before the undersigned upon referral of Plaintiff's Motion for Entry of Default Judgment against Defendant. Doc. 15 (the Motion).

### I.  Background

Plaintiff suffers various disabilities and brings this action under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181. Doc. 1 at 3. On November 4, 2021, Plaintiff visited Defendant's premises. *Id.* On December 17, 2021, Plaintiff filed a lawsuit against Defendant seeking enforcement of the ADA at Defendant's premises. *See Howard Cohan v. Carmel Management Group, LLC*, 6:21-cv-02118-WWB-GJK (M.D. Fla. 2021). On July 1, 2022, Plaintiff's suit was dismissed upon stipulation and notice of settlement. *See id.* at Doc. 20. Plaintiff alleges that in connection with that dismissal the parties entered into a Settlement Agreement and Release. Doc. 1-3 (the Agreement).[1]  According to the Agreement, Defendant

---

[1] Plaintiff notes that Defendant failed to sign the Agreement, and the attached exhibit (Doc. 1-3) does not include Defendant's signature. Doc. 1 at 13. However, Plaintiff contends that Defendant nonetheless ratified the Agreement through its attorney and through the payment of the agreed sum in Paragraph 4 of the Agreement. *See* Doc. 1-4.

was required to complete all modifications to their premises within eight months of the signing of the Agreement. *Id.* at ¶ 3. Plaintiff alleges that he returned to Defendant's premises on September 28, 2023 and required use of fully accessible bathrooms, fully accessible parking, and a fully accessible and properly marked passenger loading zone. Doc. 1 at 5. Plaintiff claims that the modifications consented to in the Agreement were not present during his most recent patronage. *Id.* Thereafter, Plaintiff filed the present suit seeking injunctive relief under the ADA and alleging breach of contract based upon Defendant's alleged failure to perform the modifications outlined in the Agreement. Doc. 1.

On December 18, 2023, an employee of Defendant's registered agent was served with a copy of the summons and Complaint. Doc. 9. To date, Defendant has not appeared or defended this action. Therefore, a Clerk's Default was entered on February 21, 2024. Doc. 14. Plaintiff now moves for default judgment. Doc. 15.

## II.    Legal Standard

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment. First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, a clerk enters default. Fed. R. Civ. P. 55(a).

Second, after obtaining a clerk's default, a plaintiff must move for default judgment. Fed. R. Civ. P. 55(b). Before granting a default judgment, however, a court must confirm it has jurisdiction over the claims, including that the complaint states a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (2); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *Anderson v. Blueshore Recovery Sys., LLC*, 2016 WL 1317706, at *2 (M.D. Fla. Feb. 25, 2016), *report and recommendation adopted*, 2016 WL 1305288 (M.D. Fla. Apr. 4, 2016).

Well-pleaded allegations of fact are admitted by default. *Id.* If a plaintiff's complaint fails to state a claim, a default judgment cannot stand. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true.)). A court must also ensure adequate service of process because a court lacks jurisdiction over a defendant who is not properly served. *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990).

### III.    Discussion

### A. The ADA Claim

#### i.    Jurisdiction

Before entering default judgment, a court must ensure it has subject matter jurisdiction over the case. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) (courts have to ensure subject matter jurisdiction). "District courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, Plaintiff alleges that Defendant violated the ADA. Doc. 1. Accordingly, the Court finds that subject matter jurisdiction is present for the ADA claim.

#### ii.    Clerk's Default

Plaintiff filed a return of service indicating that Defendant was served through delivery to an employee of Defendant's registered agent pursuant to Florida law. Doc. 9. Thus, Defendant had 21 days from the date of service to respond to the Complaint. Fed. R. Civ. P. 12(a)(1)(A)(i). Defendant has not appeared or otherwise defended this case. As such, Clerk's Default was entered on February 21, 2024. Doc. 14. The undersigned finds that the Clerk properly entered default.

That said, the Court must again scrutinize service upon application for default judgment. Florida Statutes section 48.091(4) provides that if a registered agent is absent from his or her office, then service may be made on an employee of the registered agent. *See* Fla. Stat. § 48.091(4).  Here, Plaintiff has not alleged that the registered agent was absent from his office when service was attempted.  Accordingly, it is not clear whether service was properly made on Defendant.  *See McGlynn v. El Sol Media Network Inc.*, 2023 WL 7166667, at \*1-2 (M.D. Fla. Oct. 21, 2023) (finding return of service insufficient where it did not state that the registered agent was not present at the time of service).  Accordingly, Plaintiff must address this issue prior to entry of default judgment.

### iii.    Standing

Standing "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (quotation omitted).  The Court is required to consider standing *sua sponte* even if the parties have not raised the issue, because the Court must ensure that it has jurisdiction over the case before it rules on the merits of a party's claim.  *See AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1360 (11th Cir. 2007) (explaining that a court is required to *sua sponte* consider whether a party has standing to bring a case).

A plaintiff must establish the following elements in order to have standing: 1) an injury in-fact; 2) a causal connection between the injury and defendant's conduct; and 3) that it is likely the injury will be redressed by a favorable ruling.  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013).  A plaintiff seeking prospective, injunctive relief pursuant to Title III of the ADA must also plausibly show that the plaintiff will suffer disability discrimination by the

defendant in the future.  *Id.* This means that the threat of future injury must be a "real and immediate – as opposed to merely conjectural or hypothetical – threat of future injury." *Id.*

Here, Plaintiff identified specific barriers at Defendant's premises, the property at issue, and alleged that such barriers preclude his full access, use, and enjoyment of the property.  This Court has stated that such allegations establish a "cognizable interest for purposes of standing." *Hoewischer v. Cedar Bend Club, Inc.*, 887 F.Supp.2d 1212, 1222 (finding standing because the barriers listed in the amended complaint prohibited the plaintiff such that he could not fully enjoy the defendant's facilities).  Further, Plaintiff has alleged sufficient facts showing causation between his injury and Defendant's conduct because the alleged injury occurred at Defendant's premises, the location of the alleged discriminatory barriers. *See Longhini v. J.U.T.A., Inc.*, 2018 WL 4101003, at *2 (M.D. Fla. Mar. 13, 2018).

Again, Plaintiff must also establish that his injury "will be addressed by a favorable decision."  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013).  Where, as here, prospective injunctive relief is sought, the plaintiff must allege facts plausibly showing "a real and immediate threat of future injury."  *Id.* at 1329.  Courts have considered a number of nonexclusive factors when analyzing a plaintiff's intent to return and likelihood of suffering future discrimination, including: 1) the proximity of the defendant's business to the plaintiff's residence; 2) the plaintiff's past patronage of the defendant's business; 3) the definiteness of the plaintiff's plan to return; and 4) the frequency of the plaintiff's travel near the defendant's business. *See id.* at 1327; *see also Hoewischer*. 877 F. Supp. 2d at 1222-23.

Plaintiff alleges that he frequently travels throughout the Space Coast, including Melbourne where Defendant's premises are located, and plans to do so in the future.  Doc. 1 at 6. Plaintiff states that he resides in Palm Beach County, Florida.  *Id.* at 2.  With regard to past

patronage and frequency of travel, Plaintiff alleges that he visited Defendant's premises on November 4, 2021 and travels to the surrounding areas on a regular basis.  *Id.*  Likewise, Plaintiff alleges that he plans to return to Defendant's premises in the role of a "tester" where he will ensure compliance with the ADA and any resulting relief from this Court.  *Id.* at 6-7.  Plaintiff has specifically identified the November 2021 visit and a September 28, 2023 visit.  Doc. 15 at 2-3. Accordingly, the undersigned finds that the facts as alleged as to the second and fourth factors sufficiently weigh in Plaintiff's favor.  *See Longhini*, 2018 WL 4101003, at *3 (finding that the plaintiff satisfied these factors with only the specific allegation that he visited the hotel from May 25-26, 2017 and frequents the area and hotel for pleasure).

Accordingly, the undersigned finds that the allegations as a whole, taken as true, establish standing.

### iv.    Elements of the Claim

Finally, it is Plaintiff's burden to address the elements of the causes of action and the specific, well-pled facts in the operative complaint that satisfy each of those elements.  Plaintiff cites one case—*Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 416 (11th Cir. 2011)—to set forth the elements of a claim under the ADA.  "A plaintiff alleging Title III ADA discrimination must initially prove that (1) he is a disabled individual; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA."  *Id.* (citing 42 U.S.C. § 12182(a)).  "For alterations of premises, the ADA defines discrimination as 'a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.'"  *Id.* (citing 42 U.S.C. § 12183(a)(2)).

Here, Plaintiff alleges that he is an individual with disabilities.  Doc. 1 at 3.  Plaintiff also alleges that Defendant is the lessor, operator, and/or owner of the real property that is the subject of this suit.  *Id.* at 2-3.  Plaintiff alleges that Defendant's premises are a place of public accommodation.  *Id.* at 4.  The undersigned finds these allegations sufficient to satisfy the first and second elements.

Critically, however, Plaintiff fails on the third element.  Plaintiff fails to plead whether the premises in question are a pre-existing building as defined under the ADA.[2]  *See Parks v. RS Equity Holdings LLC*, 2020 WL 1820578, at *4-5 (M.D. Fla. Apr. 10, 2020); *Kennedy v. U & V Food Corp.*, 2019 WL 343201, at *4 (M.D. Fla. Jan. 10, 2019), *report and recommendation adopted by* 2019 WL 338914 (M.D. Fla. Jan. 28, 2019) (citing 42 U.S.C. § 12182(a)).  Instead, Plaintiff conditionally pleads that "[t]o the extent the Premises, or portions thereof, existed and were occupied prior to January 26, 1992, [Defendant] has been under a continuing obligation to remove architectural barriers at the Premises where removal was readily achievable[.]"  Doc 1. At 15.  Likewise, Plaintiff states that "[t]o the extent the Premises, or portions thereof, were constructed for occupancy after January 26, 1993, [Defendant] was under an obligation to design and construct such Premises such that it is readily accessible to and usable by individuals with disabilities[.]"  *Id.*  The Eleventh Circuit has explained the standard to be applied to pre-existing buildings as follows:

> Congress enacted the ADA on January 25, 1993. After this date, facilities have to meet exacting design and implementation standards to be in compliance with the ADA. The ADA imposes different requirements on the owners and operators of facilities that existed prior to its enactment date. For those facilities, the ADA states that discrimination includes a private entity's "failure to remove architectural barriers ... where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Where removal is not "readily achievable," failure of the entity

---

[2] A "pre-existing building" under the ADA is one that existed on or before January 25, 1993.  *See* 42 U.S.C. § 12183(a).

to make goods, services and facilities "available through alternative methods if such methods are readily achievable," may constitute discrimination under the ADA. 42 U.S.C. § 12182(b)(2)(A)(v).

The ADA defines "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Congress included in the ADA factors to be considered in evaluating whether removal of a barrier is "readily achievable." These factors are (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity. *Id.*
...

[P]laintiff has the initial burden of production to show (1) that an architectural barrier exists; and (2) that the proposed method of architectural barrier removal is "readily achievable," i.e., "easily accomplishable and able to be carried out without much difficulty or expense" under the particular circumstances of the case. *Colorado Cross* [*Disability Coalition v. Hermanson Family Ltd.*], 264 F.3d [999,] 1007 [ (10th Cir. 2001) ]. If the plaintiff meets this burden, the defendant then bears the ultimate burden of persuasion that barrier removal is not "readily achievable." *Id.* at 1002–03; *see also White v. Cinemark USA, Inc.*, 2005 WL 1865495 at *6 (E.D. Cal. 2005); *Access Now, Inc. v. So. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1363 (S.D. Fla. 2001); *Ass'n for Disabled Ams., Inc. v. Claypool Holdings, LLC*, 2001 WL 1112109 at *26 (S.D. Ind. 2001); *Pascuiti v. New York Yankees*, 1999 WL 1102748 at *4 (S.D.N.Y. 1999).

*Gathright-Dietrich v. Atl. Landmarks, Inc.*, 452 F.3d 1269, 1272-74 (11th Cir. 2006).  Thus, given

Plaintiff's failure to definitively allege whether the property is a "pre-existing building" under the

ADA, the undersigned cannot determine what standard to apply, which, in turn, inhibits the

undersigned from determining whether Plaintiff has stated a claim against Defendant.

Importantly, the requirements imposed on the owners and operators of facilities by the

ADA vary based on whether the property existed before or after enactment of the ADA.  *U & V*

*Food Corp.*, 2019 WL 343201 at *5; *Gathright-Dietrich*, 452 F.3d at 1273.  Plaintiff makes only

a passing reference to whether removal of the architectural barriers Plaintiff encountered would be

"readily achievable" or that there exists "readily achievable" alternatives for Defendant to make its goods, services, and facilities available to Plaintiff. *See* Doc. 1 at 16 ("All of the above violations are readily achievable to modify in order to bring Premises or the Facility/Property in compliance with the ADA."). "[A]lleging the legal conclusion that a barrier is readily achievable, without more, is insufficient to establish that removal is, in fact, readily achievable." *Tidwell v. Southern Petro Holding LLC*, 2019 WL 2173838, at *2 (M.D. Fla. May 20, 2019) (quoting *Larkin v. Cantu LLC*, 2019 WL 2684422, at *5 (M.D. Fla. May 31, 2017); *see also Hoewischer v. Park Shopping, Ltd.*, 2011 WL 4837259, at *4 (M.D. Fla. Oct. 12, 2011) (denying motion for default judgment in ADA case in part because plaintiff's complaint failed to plead any facts to support the legal conclusion that removal of barriers was readily achievable).

As Plaintiff has failed to allege facts to provide a sufficient basis for judgment, the Court will deny the Motion as to the ADA claim.

### B. The Breach of Contract Claim

####   i.   Jurisdiction

Before entering default judgment, a court must ensure it has subject matter jurisdiction over the case. *See Arbaugh*, 546 U.S. at 500 (courts have to ensure subject matter jurisdiction). Critically, neither the Complaint nor the Motion present any argument as to how the breach of contract claim falls within this Court's jurisdiction. In the Motion, Plaintiff states that "[f]ederal common law has established that a settlement agreement is an enforceable contract between the parties to the underlying litigation." Doc. 15 at 7. Accordingly, it appears that Plaintiff seeks to bring the breach of contract claim in via federal question jurisdiction—however, Plaintiff cites no provision of the Constitution, laws, or treaties of the United States that allow for a breach of

contract claim between two non-diverse parties to be heard in federal court.[3]  While the Court may be able to exercise supplemental jurisdiction over the breach of contract claim under 28 U.S.C. § 1367(a), Plaintiff fails to plead this as a basis for the exercise of jurisdiction over the claim. Accordingly, the Court declines to grant default judgment on the breach of contract claim.

### ii.    Elements of the Claim

Even assuming the Court were to exercise supplemental jurisdiction over the breach of contract claim, Plaintiff has failed to sufficiently plead the elements for breach of contract.  Again, it is Plaintiff's burden to address the elements of the causes of action and the specific, well-pled facts in the operative complaint that satisfy each of those elements.  Plaintiff claims that "[f]ederal common law has established that a settlement agreement is an enforceable contract between the parties to the underlying litigation." Doc. 15 at 7.  Plaintiff cites a panel decision from the Eleventh Circuit in support of this proposition.  *See Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996).  However, a review of *Key* does not find any language supporting Plaintiff's position.  To be sure, *Key* does not involve any settlement agreement and the panel discussed the interpretation of an insurance contract under Florida law.  *Id.* at 1549-51.  Additionally, Plaintiff cites a decision from another district, *Hall v. Burger King Corp.*, 912 F. Supp. 1509, 1520 (S.D. Fla. Nov. 13, 1995), but that case is inapposite.[4]  Accordingly, Plaintiff has failed to provide the undersigned with the essential elements of the breach of contract claim he purports to bring.

---

[3] And Plaintiff makes no attempt to argue diversity jurisdiction exists as to the breach of contract claim.  In fact, Plaintiff concedes that he is a resident of Florida and that Defendant owns, operates, and conducts business in Florida.  Doc. 1 at 2-3.

[4] *Hall*, in part, discusses the issue of whether the execution of general releases precludes a party from then pursuing claims covered by those releases.  *Hall*, 912 F. Supp. At 1520.  However, *Hall* contains no discussion of whether an allegedly breached settlement agreement *can* serve as the basis for a "federal common law" breach of contract action.  Again, Plaintiff cites no case law

Further, Plaintiff has not established the elements necessary for the court to enforce an **_unsigned_** settlement agreement. "Courts will not enforce an unsigned settlement agreement unless the party seeking to compel enforcement of such agreement demonstrates two things—(1) first, 'that [the opposing party's] attorney had clear and unequivocal authority to enter into the settlement agreement,' []; and (2) second, that the opposing party assented to all the essential terms of the agreement." *Wells Fargo Bank, N.A. v. Mision Cristiana Bethesda, Inc.*, 2017 WL 1476307, at *3 (M.D. Fla. Apr. 25, 2017) (internal citations omitted). Plaintiff asserts that the agreement is enforceable because "Defendant ratified the Agreement through its consent to the Agreement through its attorney at the time, Robert Blanchfield, and through the payment of the agreed sum in Paragraph 4 of the Settlement Agreement and Release on October 10, 2022." Doc. 15 at 3. However, Plaintiff cites no case law supporting the proposition that the mere payment of a sum outlined in an unsigned settlement agreement renders the entirety of that agreement enforceable, especially without any other evidence of the meeting of the minds concerning the contents of the proffered, unsigned agreement. Likewise, Plaintiff does not establish that Mr. Blanchfield had "clear and unequivocal" authority to enter into the agreement, nor does he establish that Defendant assented to all of the essential terms of the agreement.

Accordingly, Plaintiff has failed to address the essential elements for a breach of contract claim. Therefore, the Motion is due to be denied as to the breach of contract claim.

---

from either the federal courts or from Florida that establish the elements of the cause of action he alleges.

**IV.      Conclusion**

Accordingly, it is **ORDERED** that the Motion (Doc. 15) is **DENIED without prejudice**.

**ORDERED** in Orlando, Florida on May 6, 2024.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE